EMANUEL BIDENLAC, Appellant, v. JAMES E. SMITH et al., Respondents.

Where the owners of a vessel employ a master for a voyage, and by parol authorize him to exercise his best judgment in the disposal of the cargo, and also in the purchase of a return cargo, they constitute him their general and special agent for such purpose.

DAVIES, J.  This action is prosecuted by the present plaintiff to recover the balance of an account of $1,241.58, with interest thereon at 9 per cent per annum, claimed to be due from defendants to the firm of Deane, Toule & Co., merchants, doing business at Pernambuco.  The defendants were the owners of the schooner Draco, and employed, in the year 1850, one Anthony Thatcher, as master on a voyage to California.  The vessel was loaded with articles for the port of San Francisco, and the master went on the usual course of the voyage, and stopped at Pernambuco.  He stopped there because the cargo was perishing, and it became so offensive to the smell that persons could not live on board with it.  He entered the port and consigned the vessel and cargo to Deane, Toule & Co., at the suggestion of the American consul. The cargo was unladen there, and Deane, Toule & Co., took charge of it, and they procured a return cargo with which the schooner came back to the port of New York.  That firm paid them the duties and custom house charges upon the outward cargo, and during the time the schooner laid there, that firm also paid all the expenses for port charges, provisions, vessel and mariners.  The firm sent by the master to defendants, an account of the sales, as far as made, and a notice of the general condition of the part of the cargo unsold.  The master saw the letter and account sales in the defendants' possession, and on his return gave the defendants a verbal account of the voyage.  The master testified that he informed the defendants of the character and standing of the firm, that they were first class merchants, and that the defendants approved of his action on the voyage.  He informed them

particularly of all his transactions with the firm of Deane, Toule & Co. The same master took charge of the schooner for another voyage, and another cargo was purchased for the vessel for the second outward voyage. He testifies that the defendants told him to go with the vessel to South America and sell the cargo; go to Pernambuco and sell the balance of what was left on the first voyage, and, if *necessary*, to draw on them for $8,000, or sell the vessel for $8,000, and do the best he could for all concerned; to exercise his own judgment as to purchase of a cargo, and employment of the schooner on their account. He had no written instructions. That his authority was general and special, or special and general. That he had all possible authority to trade, sell, and buy cargoes for the defendants. That he was expressly authorized to purchase a cargo of sugar, if in his judgment the sugar was cheap enough. The defendants told him to purchase a cargo on their account, with the proceeds or value of the cargo out there, and to draw on them for $8,000, for the balance. That he understood that he was to draw on them not to exceed $8,000, in addition to the proceeds of the cargo. One of the defendants told him that if he went to Pernambuco, the firm of Deane, Toule & Co. were to have the management of the cargo there to be taken out by him on the second voyage. He had instructions if he could not purchase sugar, to purchase any other cargo. When he arrived at Pernambuco a part of the first cargo remained unsold. The firm then sold a part of the second cargo, but as the residue could not be sold there, it was concluded to ship it to Rio. The captain requested the firm to purchase a cargo of sugar, which they did, at a cost of about $3,000. The captain, on his return, settled with the defendants; they had the account sales of Deane, Toule & Co., and in the settlement reference was had to them. He testified that he gave to the defendants a full detailed statement of all the proceedings at Pernambuco with Deane, Toule & Co., respecting the sugar purchased, and all other matters relating to the voyage. They thought it rather a hard trade, but made no objections to any of those accounts. The witness further

testified that the provisions of the outward cargo, in both instances, were bad and unwholesome. He also said he had authority to deposit the cargo and pledge it, and had authority to buy independent of the cargo, and that no restriction whatever was put upon his authority in respect to the disposition of the outward cargoes. The account sales of Deane, Toule & Co. showed the balance claimed. There was no contradictory or other testimony on the trial, and the judge charged the jury "that Thatcher, on the law arising on his testimony as to his authority, had exceeded his instructions and authority in the transaction, and that the jury must consider this as the law applicable to the case before them." To this charge the plaintiff's counsel excepted. The jury returned a verdict for the defendants, and judgment thereon was affirmed at General Term.

The charge of the judge was equivalent to a direction to the jury to render a verdict for the defendants. It seems to me that the learned judge entirely misapprehended the character and force of the evidence, in charging that Thatcher had exceeded his instructions and authority in the transaction. As that testimony should be read, it presents a clear case, and one where the defendants' responsibility for the acts of their agent is indisputable.

At the time the second voyage was contemplated, it is clear that the defendants fully apprehended the state of things at Pernambuco. It was expected, and the accounts show that expectation was well founded, that the sale of the cargo of the first voyage by Deane, Toule & Co. would furnish funds towards the purchase of a return cargo. Thatcher had full authority to sell the second cargo. He was to sell the balance of the first cargo remaining at Pernambuco, and then to purchase the return cargo, and if necessary, to draw on the defendants to the extent of $8,000. No other construction can reasonably be given to this language than that, after exhausting the proceeds of the two cargoes, Thatcher was to draw on the defendants for any balance which might remain due on the purchase of the return cargo, not exceeding the sum of $8,000. Instead of drawing for

this balance, as he clearly might have done, and thus presently have reimbursed Deane, Toule & Co. for the moneys advanced by them to purchase such return cargo, over and above the amount then realized by them on sales of the two outward cargoes, Thatcher gave them a lien on the residue of these two cargoes unsold, and the proceeds, when realized, were to be applied in liquidation of said balance. Such residuum being unsaleable in Pernambuco, it was shipped to Rio, and there sold by Maxwell, Wright & Co., and the proceeds remitted by them to Deane, Toule & Co., and by the latter firm credited to the defendants, in their account current with them. There is not the slightest evidence that everything was not done, in good faith, and for what was deemed by all parties for the best interests of the defendants. But for the bad condition of the provisions shipped, it is manifest there would not have been any balance due to Deane, Toule & Co. The moneys advanced by them were so advanced for the purpose directed by the defendants, and applied according to their directions, namely, in the purchase of the cargo of sugars. It is difficult to see upon what principle their claim for reimbursement can be resisted. Their money has been used by the defendants' agent in the precise way indicated by them, and it is no answer to their claim to say that the defendants expected they would be paid from the proceeds of the two outward cargoes. It is manifest that the defendants contemplated that some advance would be necessary to be made towards the purchase of the return cargo, by the authority given to their agent to draw on them not exceeding the sum of $8,000. They must, therefore, have contemplated such purchase would have exceeded the proceeds of the two outward cargoes by that sum, and if their agent purchased to a less extent than he had authority from them to do, such circumstance affords no reason for repudiating his acts.

Upon the testimony adduced on the trial, the plaintiff was clearly entitled to recover the balance of the advances by Deane, Toule & Co., and the learned judge was in error in charging that the agent exceeded his instructions and authority in the transaction, and that, therefore, the defendants were

not liable.   The judgment must be reversed, and a new trial ordered, with costs to abide the events.

Concurring, INGRAHAM, MULLIN, WRIGHT and SELDEN, JJ.; JOHNSON, J., dissenting; HOGEBOOM, J., and DENIO, Ch. J., not voting.

JOHNSON, J.   Thatcher, as master of the vessel and agent of the defendants, had no general authority to purchase a cargo for the vessel on the defendants' credit.   His authority plainly was, according to his own statement, to purchase with the proceeds of his cargo out, and upon credit only for the balance, for which he was authorized to draw bills not exceeding $8,000.   Contrary to his instructions, he placed his outward cargo in the hands of Deane, Toule & Co., without selling it, leaving it to be sold by them; and purchased the sugar in question wholly on the defendants' credit.   This he was not authorized to do, and although he informed Deane, Toule & Co. that he had the necessary authority to make such purchase, and they believed it, and acted in good faith in making the sale of the sugar on the defendants' credit, it can make no difference in respect to their liability.   He was a special agent, and the firm of Deane, Toule & Co. were bound to know what his authority really was.   If they chose to rely upon his representations as to the measure of his authority, it was at their own risk.   He could not bind his principals by claiming authority which had never been conferred.   As no part of the property thus purchased, or its proceeds, ever came to the defendants' hands, they are not bound unless they have in some way ratified the transaction since it took place.

Thatcher was, most clearly, I think, a special agent in this business, under instructions, though having large discretionary powers in some particulars.   He was, however, limited and restricted in respect to making purchases on the credit of his principals.   He had the right to purchase as he might see fit with the proceeds of his outward cargo, and in addition to such proceeds on the credit of his principals to an amount not exceeding $8,000, for which addition he was authorized

to draw upon the defendants. This gave him no authority to leave his outward cargo unsold, and purchase another wholly on the defendants' credit. Being a special agent, he could only bind the defendants by pursuing his authority strictly. (Paley on Agency, 202; 1 Parsons on Contracts, 41, 42, 43.)

It is manifest that the authority was not pursued strictly, nor even substantially. The outward cargo did not enter into the purchase of the sugar at all. The purchase corresponded in amount with the amount of the cargo remaining unsold, according to the inventory and a portion of a previous cargo, but according to the evidence, it was no part of the bargain that either cargo or the proceeds should apply upon the purchase. So that the cargo of sugars was not purchased in any sense with the proceeds, or upon the credit even, of the outward cargo. The judge at the circuit was clearly right, therefore, in instructing the jury that Thatcher had exceeded his instructions, as matter of law. The exception to this ruling and instruction to the jury presents the only question in the case. No question was raised in respect to a ratification by the defendants afterward, nor was there any request to submit anything to the jury. There was no conflicting evidence. The whole case in respect to the point raised depends upon the testimony of Thatcher, and from that, it is quite clear that his instructions were special, and his authority limited on the subject of making purchases, and that he was bound by such special instructions, and neglected to follow them, seem to me clear propositions, as matter of law, arising upon the uncontroverted facts of the case. If this view is correct the judgment is right, and should be affirmed.

Judgment reversed, &c.